UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

---

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION <br> 100 F Street, N.E. <br> Washington, DC 20549 <br><br> Applicant, <br><br> vs. <br><br> JOHN A. HENDERSON <br> 224 East Bailey Road – Suite E <br> Naperville, IL 60565 <br><br> and <br><br> GLOBAL RESOURCES LEADERSHIP, LLC <br> c/o The Company Corp. <br> 251 Little Falls Drive <br> Wilmington, DE 19808 <br><br> Respondents. | Civil No. |

---

## MEMORANDUM OF LAW IN SUPPORT OF THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION'S *EX PARTE* APPLICATION FOR AN ORDER TO SHOW CAUSE AND ORDER REQUIRING COMPLIANCE WITH SUBPOENAS

The United States Securities and Exchange Commission ("SEC") respectfully submits this Memorandum of Law in support of its Application, pursuant to Section 22(b) of the Securities Act of 1933 [15 U.S.C. § 77v(b)] and Section 21(c) of the Securities Exchange Act of 1934 [15 U.S.C. § 78u(c)], to compel Respondents John A. Henderson ("Henderson") and Global Resources Leadership, LLC ("GRL") to comply with SEC subpoenas seeking the production of documents and investigative testimony related to possible violations of the federal securities laws.

## PRELIMINARY STATEMENT

Henderson, on his own behalf and as Chairman and CEO of GRL, has repeatedly failed to comply with subpoenas issued by the SEC in connection with its formal investigation into potential violations of the federal securities laws related to a potentially fraudulent and unregistered securities offering by GRL and related entities. The requested documents and testimony are unquestionably relevant to the SEC's ongoing investigation, yet Henderson has made it clear that he will not comply with either of the SEC's subpoenas absent the intervention of the Court.

## STATEMENT OF FACTS

GRL is a Delaware-incorporated company based in Naperville, Illinois. According to its website, the company "provides Made in USA technology for every business silo in every country on planet earth convening leaders together across the world to lift up and bless communities, locally and globally." *See* Declaration of Christina M. Adams ("Adams Decl."), filed contemporaneously herewith, at ¶ 4. Henderson is the Chairman and CEO of Global Resources Leadership. He resides in Naperville, Illinois. *See id.* at ¶ 5.

The SEC's investigation has uncovered information indicating that GRL entered into a joint venture arrangement with a third-party entity in or about 2015 (hereinafter, the "Joint Venture"). *See id.* at ¶ 6. The purpose of the Joint Venture appears to involve the buying and selling of crude oil. *See id.* GRL and Henderson solicited individuals to invest in the Joint Venture, including through an unregistered investment fund called the "Sons and Daughters of Thunder" (a.k.a. the "SDT Fund"). In connection with the solicitation efforts, Henderson made a number of assertions regarding the activities of GRL, its funding sources, and its relationships with various third-party entities, including foreign governments. Henderson further indicated to prospective investors that significant returns, from $240,000 for a $10,000 investment to $1.3 million dollars for a $175,000 investment, could be earned in 90 days of the investment. *See id.* at ¶ 7.

On October 13, 2017, pursuant to Section 20(a) of the Securities Act [15 U.S.C. § 77t(a)] and Section 21(a) of the Exchange Act [15 U.S.C. § 78u(a)], the SEC issued an Order Directing Private Investigation and Designating Officers to Take Testimony in the Global Resources Leadership Investigation (the "Formal Order"). *See id.* at ¶ 8. Among other things, the Formal Order directed the SEC staff to conduct a private investigation to determine whether any persons or entities had engaged, or were about to engage, in acts or practices in violation of various provisions of the securities laws. *See id.* The Formal Order also designated certain individuals as officers of the SEC empowered to administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, or other records deemed relevant or material to the investigation. *See id.*

### A.     The Subpoenas To Henderson and GRL

Pursuant to the Formal Order, on May 14, 2018, the SEC staff served two subpoenas: one calling for investigative testimony to Henderson and one to GRL for records relevant to the SEC's investigation. The subpoena served on Henderson called for his testimony on June 4, 2018. *See id.* at ¶¶ 10-11 and Exhibit 1. Specifically, the SEC staff seeks to question Henderson about, among other things, the history and current activities of GRL, claims made by Henderson in his solicitation of investors, investments in the SDT Fund, and other past or current projects by GRL that involve soliciting money from investors. In deciding to subpoena Henderson, the SEC staff determined that it was necessary to obtain his testimony on these subjects, and that no other source of evidence would suffice to cover all of these topics. *See id.* at ¶ 12.

The subpoena served on GRL called for GRL to produce documents related to claims made in connection with the solicitation of investors, including but not limited to documents related to GRL's business and information on investors contacted by GRL. *See id.* at ¶ 13; Exhibit 2. In deciding to subpoena GRL for documents, the SEC staff determined that it was necessary to obtain

documents related to GRL's business and that no other source of evidence would suffice to cover all these topics. *See id.* at ¶ 14.

### B. Neither Henderson Nor GRL Has Complied With The Subpoenas.

The SEC staff served both subpoenas by certified mail through the U.S. Postal Service. Both Subpoenas were addressed to Henderson and sent to his home address. *See id.* at ¶ 16. On May 22, 2018, the SEC staff also sent both subpoenas via email to two of Henderson's email addresses. *See id.* at ¶ 19 and Exhibit 3. Having not yet heard from Henderson or GRL and in an abundance of caution, the SEC staff also sent the subpoena to Henderson's home via UPS on May 22, 2018. *See id.*

On May 24, 2018, Henderson replied to the SEC's staff's May 22 email, and he confirmed that he had "received the two subpoenas." *See id.* at ¶ 20; Exhibit 4. Henderson also wrote that he had "sought out technical and legal expertise" to respond to the SEC's subpoenas. *See id.* He also suggested talking over the phone but then noted that until he retained legal counsel "it is not best to share or talk … because of some concerns as to legality." *See id.* On May 26, 2018, the SEC wrote to Henderson and asked him to have his attorney contact the SEC staff as soon as possible. *See id.* at ¶ 20 and Exhibit 5.

Between May 26 and July 17, 2018, Henderson and the SEC staff exchanged numerous emails regarding the subpoenas. *See id.* at ¶¶ 20-40; Exhibits 4 to 25. However, GRL produced no records responsive to the subpoena by May 29, 2018, and Henderson did not provide sworn testimony on June 4, 2018. *See id.* at ¶ 42. In all or nearly all of Henderson's emails, he contended that he simply could not comply with the subpoenas without legal counsel and, for one reason or another, he could not find an attorney to represent him. *See id.* at ¶¶ 20-40. While claiming to have been unable to hire counsel, Henderson stated that he was able to consult with a Member of Congress regarding the subpoenas, and, in a later email, he claimed to have retained a "lobbyist" to

assist him with respect to the SEC's inquiry. *See, e.g., id.* at ¶¶ 22, 26, 28, 38. In email after email, Henderson was always *just about* to hire counsel but never did – or, at least, counsel has never contacted the SEC staff. And, neither Henderson nor GRL has complied with either subpoena. *See id.* at ¶¶ 20-40.

On July 16, 2018, the SEC staff offered Henderson various options regarding the date and location for his investigative testimony and asked Henderson to provide the staff with his preference. *See id.* at ¶ 39. In this same correspondence, the SEC staff asked Henderson to provide a timeline for GRL's production of responsive documents, which the staff advised could be provided on a rolling basis. *See id.* The staff warned Henderson that he had until July 17, 2018 to schedule his sworn testimony and to provide a timeline for the documents to be produced; if he continued to fail to comply with the subpoenas, the agency would seek a court order requiring his compliance. *See id.*

Notwithstanding the SEC staff's warning, on July 17, 2018 Henderson responded to the email and requested an indefinite period of time for his "pursuit [of counsel] to mature." *See id.* at ¶ 40. Henderson also declined to set a date or location for his investigative testimony, and he claimed that it would take GRL "one whole year" to produce the documents called for in the SEC's subpoena. *See id.* At the time of his July 17 email, already two months had passed since Henderson had received the SEC's subpoenas.

Henderson has not contacted the SEC staff since his July 17 email, well over a month ago. *See id.* at ¶ 41. As of the date of this Application, Henderson has not provided any date on which he will sit for testimony, and GRL has not produced a single page of records, nor has it provided any timeline whatsoever for its compliance. *See id.* at ¶ 42.

# ARGUMENT

## I. Jurisdiction And Venue Are Proper

When a subpoenaed party refuses to comply with an SEC subpoena, jurisdiction is vested in the United States District Courts to enforce such subpoena upon application by the SEC. *See* 15 U.S.C. § 77v(b); 15 U.S.C. § 78u(c). Accordingly, this Court has jurisdiction over the subject matter of this application and may issue an order directing Henderson and GRL to comply with the subpoenas.

Venue is proper before this Court because an SEC subpoena enforcement action may be brought in any district court "within the jurisdiction of which such investigation or proceeding is carried on." 15 U.S.C. § 78u(c). The present investigation is being conducted by SEC staff located at the SEC's headquarters in Washington, DC; the subpoena to GRL was issued and returnable in Washington, DC; and the subpoena to Henderson called for his testimony at the SEC's headquarters in Washington, DC. *See* Adams Decl. at ¶¶ 10-14; Exhibits 1 and 2. Therefore, venue for the enforcement of the subpoenas lies in this district.

## II. The Subpoenas Satisfy All Requirements For Enforcement

To enforce an administrative subpoena, a court must be satisfied that (i) the inquiry has a legitimate purpose, (ii) the subpoena was issued in accordance with the required administrative procedures and (iii) the information sought is reasonably relevant to some subject of the inquiry. *See United States v. Powell*, 379 U.S. 48, 57-58 (1964).[1] Once these threshold criteria are met, the burden shifts to the opposing party to establish that the subpoena is unreasonable. *See SEC v. Brigadoon Scotch Distrib. Co.*, 480 F.2d 1047, 1056 (2d Cir. 1973). The burden of showing unreasonableness "is not easily met." *Id.*

---

[1] *See also Penfield Co. v. SEC*, 330 U.S. 585 (1947); *SEC v. Arthur Young & Co.*, 584 F.2d 1018, 1024 (D.C. Cir. 1978); *SEC v. Blinder, Robinson & Co., Inc.*, 681 F. Supp. 1, 4 (D.D.C. 1987); *SEC v. Gulf Res., Inc.*, Fed. Sec. L. Rep. (CCH) ¶ 99,174 (D.D.C. Apr. 15, 1983); *SEC v. Dresser Industries, Inc.*, 453 F. Supp. 573, 557 (D.D.C. 1978), aff'd, 628 F.2d 1368 (D.D.C. 1980).

Here, none of these elements are in controversy on this application, and Henderson has not – nor could he – contested the subpoenas on these bases.

### A. The SEC's Inquiry Has A Legitimate Purpose

Congress created the SEC as an independent regulatory agency having the primary responsibility to enforce the federal securities laws and thus primary responsibility to protect the integrity of the nation's capital markets. Toward that end, in Section 21(a) of the Exchange Act of 1934, Congress gave the SEC broad authority to conduct such investigations as it deems necessary in order to determine whether any person "has violated, is violating or is about to violate" any provisions of the federal securities laws. *See* 15 U.S.C. § 78u(a); *see also SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 741 (1984); *SEC v. Dresser Industries, Inc.*, 628 F.2d 1368, 1376-77 (D.C. Cir. 1980). Further, Congress gave the SEC authority to investigate "any facts, conditions, practices or matters" that, "in its discretion," the SEC deems necessary or proper to aid in the enforcement of the federal securities laws. 15 U.S.C. § 78u(a)(1).

Courts routinely have recognized that, given this broad statutory authority, "there is virtually no possibility" that the SEC, in commencing an investigation or issuing a subpoena, is acting ultra vires.[2] Indeed, as the Supreme Court explained in *United States v. Morton Salt Co.*, 338 U.S. 632 (1950), an agency can investigate upon mere suspicion that the law has been violated, without a showing of probable cause. The Court explained that:

> [An agency] has a power of inquisition, if one chooses to call it that, which is not derived from the judicial function. It is more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance

---

[2] *See, e.g., Dresser Industries*, 628 F.2d at 1380 (investigation based on Staff conclusion that company "may have engaged in conduct" in violation of the federal securities laws "falls squarely within the [SEC]'s explicit investigatory authority"); *Blinder Robinson*, 681 F. Supp. at 4 (acknowledging that "[a]s the SEC is charged with overseeing the securities industry and preventing fraud in the trading of stocks and bonds, it is well within the scope of its authority to request information necessary to dispel or confirm suspicions of which they have substantive evidence").

> that it is not. When investigative and accusatory duties are delegated
> by statute to an administrative body, it, too, may take steps to inform
> itself as to whether there is probable violation of the law.

*Id.* at 642-43. The SEC thus is acting within the scope of its Congressionally-granted authority even where its investigation is based on nothing more than official curiosity. *See, e.g., Arthur Young*, 584 F.2d at 1023-24 & n.45 (quoting *Morton Salt*) (recognizing that "even if one were to regard a request for information . . . as caused by nothing more than official curiosity, nevertheless law-enforcing agencies have a legitimate right to satisfy themselves that corporate behavior is consistent with the law and public interest").

Here, on October 13, 2017, pursuant to its authority under Section 20(a) of the Securities Act of 1933 and Section 21(a) of the Securities Exchange Act of 1934 the SEC issued a Formal Order that authorizes the Division of Enforcement to investigate potential violations of the federal securities laws. *See* Adams Decl. ¶ 8. The Staff, consistent with the Formal Order, seeks details about Henderson's operation of and offerings of securities made by and on behalf of GRL, to determine whether violations of the federal securities laws have occurred. The SEC's investigation – and the subpoenas issued in connection therewith – is unquestionably within the scope of the Formal Order and the SEC's Congressionally-authorized law enforcement powers.

### B.     *All Administrative Requirements Have Been Satisfied*

Section 19(c) of the Securities Act of 1933 [15 U.S.C. § 77s(c)] and Section 21(b) of the Exchange Act of 1934 [15 U.S.C. § 78u(b)] provide that the SEC may, in the course of conducting investigations, designate officers and empower them to subpoena witnesses and the production of records. The Commission issued a Formal Order in this matter designating SEC staff and empowering them to conduct an investigation into GRL and issuing subpoenas as appropriate. Pursuant to Rule 8 of the Commission's Rules Relating to Investigations, investigative subpoenas

may be served by several methods, including by any method conveying actual notice. 17 C.F.R. §§ 203.8 and 201.104(b)(3).

Here, a SEC Staff attorney, designated in the relevant Formal Order as an officer of the SEC, issued the subpoenas to Henderson and GRL, and copies of the subpoenas were served by certified U.S. mail on Henderson and GRL at Henderson's home, by UPS, and by email. *See* Adams Decl. at ¶¶ 10-19 and Exhibits 1-3. On May 24, 2018, Henderson personally confirmed his receipt of the subpoenas, both the hard copy versions and those sent via email. *See id.* at ¶ 20 and Exhibit 4. And Henderson and the SEC staff corresponded regarding his and GRL's non-compliance with subpoenas for approximately two months. *See id.* at ¶¶ 20-40 and Exhibits 5-25. Consequently, Henderson's and GRL's receipt of the subpoenas is not in controversy.

### C. *The Subpoena Seeks Information Relevant To The Investigation*

As the D.C. Circuit has recognized, the SEC's subpoena power is "co-extensive" with its investigative power and, thus, a conclusion that the subpoena is too indefinite or seeks irrelevant information is essentially "foredoomed by [the Circuit's] holding that the scope of the investigation itself is adequately bounded." *Arthur Young*, 584 F.2d at 1025. That is, "[t]he breadth of an investigation is for the investigators to determine. The breadth of a subpoena or of a search made in records may be excessive, but the test is relevance to the specific purpose, and the purpose is determined by the investigators." *Id.* at 1031 (quoting K. Davis, ADMINISTRATIVE LAW TREATISE § 3.06, at 188-89 (1958)); *see also Blinder Robinson*, 681 F. Supp. at 4 (prima facie evidence that the evidence sought has potential importance in terms of the investigative objectives is sufficient to validate the scope of the request). The threshold for demonstrating relevance, thus, is low.

Henderson has never challenged the relevance of the information the SEC seeks in the subpoenas, and there can be no question here that the information sought by the SEC is highly relevant (and, indeed, reasonably tailored) to the SEC's investigation. The SEC need not show (i)

probable cause that a violation has occurred in order to investigate possible violations of the federal securities laws or (ii) likelihood of success in a litigation that it may or may not commence at the conclusion of its investigation. *See* Section II.A, above. Indeed, as this Court explained in *In re Grand Jury Proceedings*, 201 F. Supp. 2d 5 (D.D.C. 1999), albeit in the context of a grand jury subpoena, "[w]hether the subpoenas will reveal incriminating evidence is at this stage speculative. Grand jury investigations, no less than other investigations, will necessarily meet dead-ends. The point is simply that leads cannot be foreclosed before they are pursued." *Id.* at 11.

Here, the SEC is investigating unregistered offers to sell securities by, or on behalf of, GRL and related entities. The SEC has received information that Henderson, and others, had a role in such offerings, and indeed Henderson is an officer and director of GRL. The SEC's request for documents related to GRL's operations and offers to sell securities, and investigative testimony from Henderson on these same subjects are all clearly relevant to the SEC's inquiry.[3]

For all of the foregoing reasons, the Court should find that the SEC has satisfied its burden on this Application.

---

[3] Henderson cannot refuse to comply with the subpoenas on the grounds that he has a right to counsel and cannot be compelled to appear for testimony or produce documents until he has retained counsel. The SEC staff has provided Henderson ample time to secure the legal representation of his choice. Neither Henderson nor GRL has any constitutional or other entitlement to have the SEC's investigation stalled until he finds counsel. *See SEC v. Gerasimowicz*, 9 F. Supp. 3d 378, 383 (SDNY 2014) (no right to counsel in civil case). Henderson, in effect, has used his stated inability to retain counsel as a shield to prevent him from complying with lawful demands for testimony and documents, and the staff has already accommodated his efforts to retain counsel for more than three months.

## CONCLUSION

For the reasons stated above and in the SEC's Application, the SEC respectfully requests that the Court grant the Application and enter an Order, in the form submitted, requiring Henderson and GRL to show cause why they should not be ordered to produce documents and appear for testimony pursuant to the subpoenas properly issued by the SEC and served.

Respectfully submitted,

*[signature]*

Stephan J. Schlegelmilch (DC Bar No. 983874)
U.S. SECURITIES AND EXCHANGE COMMISSION
Division of Enforcement
100 F Street, N.E.
Washington, DC 20549
202.551.4935 (Schlegelmilch)
SchlegelmilchS@SEC.gov

*Counsel for Applicant*